IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| Rosa and Raymond Parks Institute for Self Development, | Case No. 2:13-cv-00817-WKW-WC |
| Plaintiff, | |
| v. | |
| Target Corporation, | |
| Defendant. | |

**Defendant Target Corporation's Memorandum in Support of its
<u>Second and Renewed Motion for Sanctions</u>**

## INTRODUCTION

This Court has twice ordered the plaintiff in this right of publicity case to produce financial information relevant to its damages claim—a claim which Plaintiff currently alleges to be valued at $37 trillion. Plaintiff has not complied with these orders. Instead, and despite the fact that Plaintiff's damages theory is predicated entirely on the "previous amounts awarded to the Plaintiff for similar infractions," Plaintiff has refused to provide a full accounting of these "previous amounts." Instead, Plaintiff has clung to a theory—twice rejected by this Court— that it need not produce older financial information in this case.

With discovery now closed, Plaintiff's actions have unfairly prejudiced Target's ability to defend against Plaintiff's claim for damages. And, although Target's motion for summary judgment (on First Amendment and other grounds) should resolve this case in its entirety, that motion remains pending, and pretrial deadlines are fast approaching. Plaintiff should therefore be sanctioned for its discovery misconduct now, in a way that addresses the harm Plaintiff has caused. Target therefore respectfully requests that this Court strike Plaintiff's claims for damages pursuant to Rule 37(b)(2)(A).[1]

## BACKGROUND

The day discovery opened—March 5, 2014—Target served document requests and interrogatories seeking Plaintiff's past licenses, and other financial information, relevant to the rights Plaintiff is asserting in this case (the "Alleged

---

[1] While additional sanctions and remedies may be appropriate, including sanctions pursuant to Rule 37(c), it appears that many such matters may be raised as *motions in limine* and thereby left to the discretion of the judge who will preside over trial in this matter. *See* Dkt. 53. Target expressly reserves all rights and remedies arising from discovery misconduct not addressed in this motion.

Rights"). *See* Dkt. 38 at 9.[2] For instance, Target's Document Request No. 9 sought documents "sufficient to show all known uses, licensed or otherwise, of the Alleged Rights during the period January 1, 2005 to the present." Dkt. 39-1 at 5. And Target's Interrogatory No. 3 sought a list of "authorized commercial use[s]" of the Alleged Rights, along with "the nature and amount of [any associated] compensation." Dkt. 39-2 at 4. At first, Plaintiff didn't respond to these requests at all. *See* Dkt. 38 at 2-4. Eventually, by mid-August, and despite repeated attempts to resolve these and other discovery issues cooperatively and without court intervention, Plaintiff still had not produced any documents in response to Target's Request No. 9, and Plaintiff still had not listed any past uses in response to Target's Interrogatory No. 3. *See id.*

Target brought its first motion to compel on August 22, 2014. *See id*. In that motion, Target explained in detail the importance and relevance of this financial information. *See id.* at 9-12. Target also explained why Plaintiff's objection—that it need not answer these requests at all because they "seek[] information outside the relevant statute of limitations period"—was improper.[3] *See id.* at 9-10. In response, "Plaintiff's opposition . . . [was] largely cursory and substantially fail[ed] to state a viable objection to any specific discovery request propounded by Defendant." Dkt. 42 at 2. Indeed, this Court found that "[t]he greater part of Plaintiff's response consist[ed] of its reiterating arguments which were already rejected when the court denied Plaintiff's own motion to compel." *Id.* This Court therefore granted Target's motion to compel on September 11, 2014, finding that,

---

[2] All citations to the docket refer to the ECF pagination at the top of the page. This citation, for example, refers to page "9 of 16."
[3] This objection was wrong on the merits, dkt. 38 at 9-10, and had also been waived, *id.* at 5-7.

3

"[a]s best the court can tell, Defendant's requests seek information that will allow it to defend against Plaintiff's allegations and challenge Plaintiff's claim of damages totaling no less than $5,000,000.00." *Id.* at 3-4.

Plaintiff did not comply with this Court's September 11 order. Instead, it stood on its claim that requested information was "too old and therefore objectionable as irrelevant"—even though that argument had already been rejected by this Court—forcing Target to bring a second motion to compel. *See* Dkt. 46 at 4. At the time, the depositions of four Plaintiff witnesses, and the close of discovery, were less than two weeks away. *Id.* at 2-4. The following day, September 26, the Court ordered the parties to attend a September 30 hearing "in light of the urgency posed by the pending depositions in this case."Dkt. 48. The Court warned Plaintiff that "recoupment of [Defendant's] fees and expenses, as well as other personal sanctions, may be considered." *Id.* at 2.

At the hearing in Montgomery, Plaintiff claimed that it had "already conducted a reasonable and diligent investigation and fully and completely responded to" the majority of Target's discovery requests, but it did not make that claim in response to the financial requests that are the main focus of this motion (such as the aforementioned Document Request No. 9 and Interrogatory No. 3). *See* Dkt. 53 at 1-2. Instead, Plaintiff continued to rely on its contention that it need not produce this information because it is too old and outside the relevant statute of limitations period. The Court rejected that argument for the second time, stating that "Plaintiff's request to limit its search to documents from the year 2011 to the present has been and is hereby DENIED." *Id.* at 1. Plaintiff was therefore ordered to supplement its answers to Target's Interrogatories Nos. 3-

4

10, and to produce documents in response to Target's Requests Nos. 9, 11, 12, 17, and 18, by 8:00 AM on October 6, 2014—one hour before the first scheduled deposition of a Plaintiff's witness. *Id.* at 2. In addition, at the September 30 hearing, the Court warned Plaintiff a second time that failure to comply would result in sanctions, up to and including dismissal of the case.

Plaintiff did not comply with this Court's October 3 order. On the night of October 5, Plaintiff produced just one document: a 2013 IRS form in response to Target's Requests Nos. 17 and 18. *See* Ex. C.[4] It did not produce any past licenses or other such financials, and it did not produce any documents at all in response to Target's Requests Nos. 9, 11, and 12. *Id.* On October 5 Plaintiff also provided supplemental interrogatory answers, but these too were deficient—for example, although Plaintiff wrote something in response to Target's Interrogatory No. 3, Plaintiff did not actually answer the interrogatory by providing the requested list of past compensation paid for use of the Alleged Rights. *See* Ex. B; Dkt. 39-2.

At the October 7 and 8 depositions, Plaintiff's misconduct continued. Two of the four noticed witnesses did not appear for their deposition, including the witness who verified Plaintiff's interrogatory answers and was apparently responsible for Plaintiff's document collection. The Rule 30(b)(6) designee who did appear was unprepared to testify on many noticed topics. And the testimony that was given by Plaintiff's witnesses—which identified a great deal of financial and other requested information that had never previously been disclosed in discovery—made it abundantly clear that Plaintiff had never taken its discovery obligations, and this Court's September 11 and October 3 orders, seriously. As a

---

[4] All citations to Exhibits refer to the concurrently-filed declaration of Peter M. Routhier.

5

result, with discovery closed and pretrial deadlines approaching, Target's ability to defend against Plaintiff's claim to damages, as well as the integrity of the discovery process as a whole, has been prejudiced. Plaintiff should therefore be sanctioned in a manner that would work to secure the integrity of the discovery process in these proceedings and to remedy the prejudice caused the defendant.

## ARGUMENT

I.  **Plaintiff has not complied with this Court's previous discovery orders**

Plaintiff has been ordered, multiple times, to produce financial information relevant to the damages inquiry in this case. This financial information is responsive to a number of Target's requests, such as Target's Document Requests Nos. 5-9, 16-18, and Interrogatory No. 3. *See* Dkt. 39-1 at 4-6; Dkt. 39-2 at 4. Plaintiff has not complied with these requests.

For example, Plaintiff has twice been compelled to answer the following Interrogatory No. 3:

> Interrogatory No. 3: List each and every time that the Institute has made or authorized commercial use of the name, image and/or likeness of Rosa Parks, or any other Alleged Right. For each instance listed, include whether the use was compensated and the nature and amount of such compensation.

Dkt. 39-2 at 4. This Interrogatory clearly calls for a list of past uses and the amount of compensation for that use. Yet Plaintiff's final supplemental response to this Interrogatory, in its entirety, merely provided as follows:

> Since the death of Mrs. Parks, the rush to use her name and likeness escalated. Unfortunately, however, the larger companies, like Target, used her name without permission. That is why we hired CMG to police the use. CMG did not perform and was fired. That is why we have engaged attorneys to try to recoup the loss. This suit was one of our recent efforts.
>
> There were singers from Belgium, France and the United States who requested to use her name. They were denied in 2011.

Ex. B.

6

In addition to the fact that this response is insufficient on its face in that it is nonresponsive, Target has learned that there are a number of past uses of the Alleged Rights that are responsive to this Interrogatory, but which Plaintiff has never disclosed in the interrogatory or elsewhere in the case. For example, Target previously explained that, because of records publicly filed in a previous litigation, "it is a matter of public record that the Institute has been a party to at least a half dozen agreements, and dozens more letters, which have not been produced or identified in this case." Dkt. 46 at 7.[5] Plaintiff has never disputed this point. Yet it has never disclosed those agreements in response to Interrogatory No. 3, and it has never produced those agreements in response to the relevant document requests (such as Request No. 5, *see* dkt. 39-1).

In fact, Plaintiff's Rule 30(b)(6) witness testified—on the last day of the discovery period in this case—that there were a number of compensated uses of the Alleged Rights that Plaintiff had never previously disclosed. And despite the fact that this witness was properly noticed to give testimony on this very topic,[6] the witness was unable to recall basic details about these deals (such as the amount of compensation paid). For example, the witness recalled some kind of agreement between Plaintiff and the Danbury Mint, but the witness could not recall any of the details, such as the amount of compensation paid or received in connection with the deal. Worse, Plaintiff had never previously disclosed this deal before, and as the following testimony shows, Plaintiff never even tried to

---

[5] Although the public records disclose the existence of the agreements, they do not disclose the financial terms as requested in this case. *See* Dkt. 48-8 at 21-23.
[6] *See* Dkt 59-3 at 6 (applicable Rule 30(b)(6) notice which seeks testimony on, *inter alia*, "money and/or other compensation paid or received in connection with the Alleged Rights").

7

obtain the relevant documents in order to respond to Target's requests and this Court's orders:

> Q. So there was a deal between the institute and the Danbury Mint at some time between 2009 and 2012, but you
> A. Yes
> Q. – can't remember the terms?
> A. I can't remember the terms. But we had worked with them before.
> Q. Can you recall anything else in that time frame?
> A. I can't really – I can't really recall
> Q. Does the institute still have any records of any – any deals it might have entered into between 2009 and 20012, emails or other documents?
> A. They would be with the attorneys. We don't – I would have the emails and so forth and so on. But the actual agreements would be with the attorneys.
> Q. So, for example, with the Danbury Mint agreement, the institute doesn't have a copy of the final agreement with the Danbury Mint?
> A. I would have to check to see if we have it or if the attorney has it.

Ex. A. at 62:21-63:19.

This was not an isolated problem. Plaintiff's Rule 30(b)(6) designee repeatedly testified that there were a number of previously undisclosed agreements, but that she could not recall the terms of those agreements and had never even looked for them. For example, the witness provided the following testimony regarding deals during the 2009-2012 time frame:

> Q. So then I'd like to discuss the period from 2009 up through the end of 2012. Did the institute receive any money or other compensation or enter into any licenses from 2009 through the end of 2012 in connection with the name, image and likeness of Rosa Parks?
> A. Yes.
> Q. Do you recall which times and how many times that happened?
> A. No.

Ex. A. at 60:16-61:18.[7]

---

[7] *See also, e.g.,* Ex. A at 94:1-95:17 ("Q. [O]ther than the institute's relationship with CMG, has the institute ever entered into a six-figure contract or licensing agreement for the rights to use the name, image and likeness of Rosa Parks? A. No, because we never entered into – we didn't do plaques or t-shirts or cups or things like that. We always entered into agreements where it was a right. Well, yes, we did, two contracts. Henry Ford's contract was more than a – was definitely a

8

In fact, it is now abundantly clear that Plaintiff has never done a reasonable search in response to Target's discovery requests and this Court's discovery orders. For instance, Plaintiff's Rule 30(b)(6) designee testified that they had another lawyer who had previous licensing agreements and other potentially relevant information, but they have never bothered to ask that lawyer to provide discovery materials in response to this Court's orders. *See* Ex. A at 65:17-66:19.[8] In addition, that same witness testified that "we don't throw anything away," that Plaintiff puts documents into storage "when we run out of space," and that Plaintiff has put documents in storage as recently as "2013 . . . could have been 2014." Ex. A at 108:5-109:7. Nevertheless, despite the fact that documents about previous deals were held in these boxes, Plaintiff did not look through any of those boxes in connection with this litigation:

> Q. So these documents evidencing these deals and some others are stored in boxes –
> A. Yes.
> Q. – somewhere in Michigan?
> A. Yes.

Ex. A at 100.

> Q. You did not look through any of the additional documents that the institute has but which were put in storage?

---

six-figure contract, and Troy State. . . . . Q. Well, both of those agreements – which we've asked for but I've never seen before. Both of those agreements . . . relate to actual museums.. . . right? A. The library and museum, yes . . . Q. [Was] the sale of items and general merchandise that might bear the name, image or likeness of Rosa Parks part of the deals that the institute had with either Troy State or with the Henry Ford Museum? A. A gift shop was part of the deal with Troy State. . . And Henry Ford, we never had a gift shop deal, even though they have a gift shop. Q. What do they sell at the gift shop at the Troy State museum? A. T-shirts, mugs and all kinds of things. Q. Are these items that bear Rosa Parks' name or her image? A. Yes.")

[8] "Q. You mentioned that some relevant documents – I believe you were suggesting that some documents about this might be with some lawyers? A. Stephen Cohen is our attorney for the estate. So if you need to talk to him, he could inform you. . . Q. [D]o you believe that Mr. Cohen has copies of those licenses? A. He would have copies. . . Q. Have you asked Mr. Cohen to get those documents for you for this litigation? A. I didn't – I didn't remember that there - - I needed to do that. Because like I said, you know, I'm teetering on that – you know, that date time. But when I looked through my files, you know, it wasn't anything there for compensation."

9

A. No.

Ex. A. at 109:4-109:7.

Finally, although Target repeatedly attempted to understand the basis for the Institute's answers to Target's interrogatories, the relevant Rule 30(b)(6) designee was not prepared to answer questions about them. *See* Ex. A, 153:7-155:24. And while Target had noticed the individual who verified the accuracy of those interrogatories for deposition in Montgomery on October 7, she never appeared for that deposition.

## II. Plaintiff should be sanctioned, and its claim for damages should be stricken, because its refusal to produce damages information has prejudiced the defendant and the integrity of the discovery process

Plaintiff should be sanctioned because its failure to provide a full financial accounting has prejudiced the defendant and the integrity of the discovery process. *See Gratton v. Great American Communications*, 178 F.3d 1373, 1374 (11th Cir. 1999) (noting that the purpose of Rule 37 is "to prevent unfair prejudice to the litigants and insure the integrity of the discovery process").

Plaintiff's actions have prejudiced the defendant because Plaintiff's entire damages theory is "base[d] . . . on previous amounts awarded to the Plaintiff for similar infractions." Ex. B at 4; *see also* dkt. 57 at 36-39. But in fact, Plaintiff's damages disclosure only refers to one such "previous amount." *See id.* Having disclosed such a theory, Plaintiff cannot pick and choose which previous "previous amounts" it wants to disclose and which it would prefer to withhold. Without a proper disclosure of all of these "previous amounts," Target cannot show how they contradict Plaintiff's claim that $37 trillion is a fair damages amount in this case.

Worse, these actions disrupt the integrity of the discovery process as a whole. *See In re Kilby*, 196 B.R. 627 (Bankr. M.D. Fla. 1996) ("Parties may not pick and choose which discovery requests they wish to respond to."). Plaintiff has defied two court orders compelling this discovery and rejecting Plaintiff's argument that older financial material is not discoverable. Plaintiff has continued to argue that such information is "off limits to this proceeding."[9] Plaintiff's refusal to comply with this Court's orders makes a fair trial on damages impossible.

Target therefore respectfully requests, as a sanction under Rule 37, that this Court strike Plaintiff's claims for damages. This sanction would serve Rule 37's dual goals, "to prevent unfair prejudice to the litigations and insure the integrity of the discovery process." *See Gratton v. Great American Communications*, 178 F.3d 1373, 1374 (11th Cir. 1999). Similar relief has been awarded and upheld in similar circumstances. *Klayman v. Judicial Watch, Inc.*, 256 F.R.D. 258 (D.D.C. 2009), aff'd, 628 F. Supp. 2d 84 (D.D.C. 2009).

In *Klayman* the court sanctioned the plaintiff by prohibiting it from introducing evidence in support of its damages claims. *Id.* at 263. The *Klayman* plaintiff had refused to produce damages-related information despite multiple court orders. *Id.* at 262. The court found that this failure "severely prejudiced Defendants by preventing them from reviewing any documentary evidence relating to Plaintiff's damages." *Id*. The *Klayman* court also emphasized "the prejudice [this] caused to the opposing parties and the judicial system." *Id.* As a result, Magistrate Judge Kay held that "Plaintiff will be prohibited from

---

[9] Ex. A, 100:18-101:25

11

testifying or introducing into evidence any documents in support of his damages claims." *Id.* at 263. Plaintiff objected, but that objection was overruled. *Klayman v. Judicial Watch, Inc.*, 628 F. Supp. 2d 84, 98 (D.D.C. 2009).

In fact, the Eleventh Circuit has affirmed the sanction of complete dismissal in circumstances like these. *E.g., Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987); *Malautea v. Suzuki Motor Co., Ltd.*, 987 F. 2d 1536, 1542 (11th Cir. 1993). For instance, in this case, as in *Buchanan*, the sanctioned party failed to comply with two court orders following two granted motions to compel. *See Buchanan*, 820 F.2d at 361. In *Buchanan*, the court granted the sanction of dismissal on the third motion. *See id.* In this case, Target seeks a less restrictive sanction—one that, while not sufficient to remedy all of Plaintiff's discovery failures, would address the prejudice caused by Plaintiff's failure to provide a fair opportunity to challenge its damages claims: an order striking Plaintiff's claims for damages. Such an order would not terminate the action, but rather would permit Plaintiff to continue on with its request for injunctive relief against Target's sale of biographies telling Rosa Parks' historic story.

Target also requests an order granting its reasonable costs and fees incurred in connection its two sanctions motions.

## Conclusion

Target first sought this Court's assistance in the discovery process because, despite Target's best efforts, Plaintiff "simply [would] not meaningfully participate in the discovery process." Dkt. 38 at 2 of 16. Two months and two court orders later, little has changed. With discovery now closed, Target's ability to defend against Plaintiff's damages claims has been severely prejudiced. Target

therefore respectfully requests that this Court sanction Plaintiff pursuant to Rule 37 by striking Plaintiff's claims for damages and awarding Target the reasonable costs and fees it incurred in connection with its sanctions motions.

Dated: November 10, 2014

*/s/ Peter M. Routhier*_____
James R. Steffen (*pro hac vice*)
Peter M. Routhier (*pro hac vice*)
**FAEGRE BAKER DANIELS LLP**
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402-3901
Telephone:  612-766-7000
Email:  james.steffen@FaegreBD.com
           peter.routhier@FaegreBD.com

Helen Kathryn Downs (ASB-8460-O74H)
**BUTLER SNOW LLP**
One Federal Place
1819 5th Avenue North, Suite 1000
Birmingham, Alabama 35203
Telephone:  (205) 297-2215
Facsimile:   (205) 297-2201
Email:  HK.downs@butlersnow.com

## CERTIFICATE OF SERVICE

I hereby certify that on this the 10th of November, 2014, the foregoing was filed electronically using the CM/ECF system, which effectuates service on the following counsel of record by electronic mail:

>Gwendolyn Thomas Kennedy, Esq.
>**KENNEDY LAW GROUP**
>1623 Forest Avenue
>Montgomery, Alabama 36106
>Telephone: (205) 265-9021
>Email: Gwendolyntkennedy@yahoo.com

>*/s/ Peter M. Routhier*