IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

ROSA AND RAYMOND PARKS          )
INSTITUTE FOR SELF             )
DEVELOPMENT,                   )
                               )
            Plaintiff,         )          CASE NO. 2:13-CV-817-WKW
                               )               [WO]
      v.                       )
                               )
TARGET CORPORATION,            )
                               )
            Defendant.         )

## MEMORANDUM OPINION AND ORDER

Before the court is a motion for summary judgment (Doc. # 56) filed by
Defendant Target Corporation.  Plaintiff Rosa and Raymond Parks Institute for
Self Development (the "Parks Institute") filed a response in opposition to the
motion (Doc. # 60), to which Target replied (Doc. # 66).  After careful review of
the arguments, evidence, and relevant law, the court finds that Target's motion for
summary judgment is due to be granted.

## I. JURISDICTION AND VENUE

The court exercises subject-matter jurisdiction pursuant to 28 U.S.C.
§ 1332.[1] Personal jurisdiction and venue are uncontested.

_____

[1] In the Parks Institute's Amended Jurisdictional Statement (Doc. # 72), which it filed to
cure deficient jurisdictional allegations pertaining to the citizenship of (continued . . . )
( . . . continued) both parties, the Parks Institute asserts that both diversity jurisdiction, 28 U.S.C.
§ 1332, and supplemental jurisdiction, 28 U.S.C. § 1367, are present.  The Amended

## II.  STANDARD OF REVIEW

To succeed on summary judgment, the movant must demonstrate "that there is no genuine dispute as to any material fact and [that it] is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The court must view the evidence and the inferences from that evidence in the light most favorable to the nonmovant.  *Jean-Baptiste v. Gutierrez*, 627 F.3d 816, 820 (11th Cir. 2010).

The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  This responsibility includes identifying the portions of the record illustrating the absence of a genuine dispute of material fact.  *Id.*; Fed. R. Civ. P. 56(c)(1)(A).  Alternatively, the movant can assert, without citing to the record, that the nonmoving party "cannot produce admissible evidence to support" a material fact.  Fed. R. Civ. P. 56(c)(1)(B).  If the movant meets its burden, the burden shifts to the nonmoving party to establish – with evidence beyond the pleadings – that a genuine dispute material to each of its claims for relief exists.  *Celotex*, 477 U.S. at 324.  A genuine dispute of material fact exists when the nonmoving party produces evidence allowing a reasonable fact

---

Jurisdictional Statement is sufficient to satisfy § 1332's requirement that complete diversity exist between parties.  However, § 1367's supplemental jurisdiction is neither present nor required because the Parks Institute does not allege any federal-law claims in its Amended Complaint, and the diversity of the parties is sufficient to establish jurisdiction over the Parks Institute's state-law claims.

finder to return a verdict in its favor.  *Waddell v. Valley Forge Dental Assocs*., 276 F.3d 1275, 1279 (11th Cir. 2001).

## III.  BACKGROUND

The Parks Institute is a Michigan 501(c)(3) corporation that owns the name and likeness of the late Rosa Parks.  Rosa Parks, who was African-American, became an icon of the Civil Rights movement when she refused to surrender her seat to a white passenger on a racially segregated Montgomery, Alabama bus.  Her actions ignited the Montgomery Bus Boycott.  Target is a national retail corporation headquartered in Minneapolis, Minnesota.  Target operates more than 1,800 retail stores across the United States, as well as an e-commerce website.

Beginning in 2009, Target offered for sale a collage-styled plaque in a limited number of its retail stores.[2]  The plaque contained the following images, as described by its creator Stephanie Workman Marrott: (1) a stylized rendering of the phrase "Civil Rights"; (2) an illustrated exhibit submitted in *Browder v. Gayle*, 142 F. Supp. 707 (M.D. Ala. 1956), depicting where Rosa Parks was sitting on the bus prior to her arrest; (3) a stylized rendering of the word "Change"; (4) an illustration of the Cleveland Avenue bus; (5) a stylized rendering of Rosa Parks's name and dates of birth and death; (6) a picture of Rosa Parks's Congressional Gold Medal; (7) a photograph of Rosa Parks and Martin Luther King, Jr.; and (8)

---

[2] Target discontinued its sale of the plaque in 2013.

an inspirational statement made by Rosa Parks.  (Doc. # 58.)  It was this plaque that Elaine Steele, co-founder of the Parks Institute, and Anita Peek, Executive Director of the Parks Institute, discovered when they visited a number of Target retail stores located in the state of Michigan.

Upon realizing that Target was selling a plaque adorned with images of and related to Rosa Parks, the Parks Institute filed this lawsuit on November 6, 2013. The initial complaint alleged both federal- and state-law claims.  On November 8, 2013, however, the Parks Institute amended its complaint to allege only state-law claims – right of publicity, misappropriation, and unjust enrichment.  Following a period of discovery,[3] it became clear that the lawsuit challenged Target's sale of eight items in addition to the plaque: 1) the book, *Rosa Parks: My Story*, by authors Rosa Parks and Jim Haskins; 2) the book, *Who Was Rosa Parks?*, by author Yona Zeldis McDonough and illustrator Nancy Harrison; 3) the book, *Rosa Parks (Childhood of Famous Americans)*, by author Kathleen Kudlinkski and illustrator Maryl Henderson; 4) the book, *Rosa Parks*, by author Eloise Greenfield

---

[3] In its Amended Complaint, the Parks Institute did not identify the specific items it believed Target was selling in violation of the Parks Institute's exclusive ownership of the name and likeness of Rosa Parks.  Rather, the Amended Complaint alleged that Target "used Rosa Parks' name, likeness, and image to sell products and did promote and sell products using said name, likeness, and image for [Target's] own commercial advantage."  (Doc. # 5.)  On November 8, 2013, the Parks Institute filed its first set of interrogatories.  In responding to the interrogatories and while maintaining objections, Target identified the plaque, several books, and one movie as items it sells, which bear the name, likeness, or image of Rosa Parks.  On May 13, 2014, in response to Target's Interrogatories and Requests for Production, the Parks Institute confirmed that the items at issue were those previously referred to "in Target's responses to the [Parks] Institute's discovery."  (Doc. # 27-2, Ex. A.)

and illustrator Gil Ashby; 5) the book, *A Picture Book of Rosa Parks*, by author David A. Adler and illustrator Robert Casilla; 6) the book, *The Rebellious Life of Mrs. Rosa Parks*, by author Jeanne Theoharis; 7) the book, *The Story of Rosa Parks*, by author Patricia A. Pingry and illustrator Steven Walker; and 8) the American television movie, *The Rosa Parks Story*, written by Paris Qualles and directed by Julie Dash.[4]

On July 1, 2014, Target moved for partial summary judgment on the Parks Institute's claims related to its sale of the books and movie – all items except the plaque.  It argued that the books and movie were all biographical works entitled to First Amendment protection.  The Parks Institute opposed the motion.  On October 27, 2014, with its motion for partial summary judgment still pending, Target filed the present motion for summary judgment as to all of the Parks Institute's claims.[5]

## IV.  DISCUSSION

### A.  <u>Applicable Law</u>

In its Amended Complaint, the Parks Institute alleges that Target, "through its authorized agents and representatives in the state of Alabama in particular and through the United States generally, . . . used Rosa Parks'[s] name, likeness, and

---

[4] Five of the books and the single movie have been available for sale on Target's website since before 2011.  In 2013, Target added a sixth Rosa Parks book to its online offerings.  These seven works were never offered for sale in any of Target's retail stores.  Target, however, has carried a Rosa Parks children's book in its retail stores since before 2011.

[5] The motion for partial summary judgment will be denied as moot.

image to sell products and did promote and sell products using said name, likeness, and image for Defendant's own commercial advantage." (Doc. # 5.) Further, when opposing summary judgment, the Parks Institute applied Alabama law to argue that the First Amendment does not protect Target's actions. Alternatively, Target contends that Michigan law should apply, but notes that a conflict between Alabama law and Michigan law does not exist in this context.

When a federal court sits in diversity, it must "apply the forum state's choice-of-law rules." *Boardman Petroleum, Inc. v. Fed. Mut. Ins. Co.*, 135 F.3d 750, 752 (11th Cir. 1998). Accordingly, Alabama's choice-of-law rules govern. Under Alabama law, the doctrine of *lex loci delicti* applies to tort claims, meaning that the law of the state in which the injury occurred governs the substantive rights of an injured party, while the procedural law is supplied by the forum state. *Randolph v. Tenn. Valley Auth.*, 792 F. Supp. 1221, 1222 (N.D. Ala. 1992); *Fitts v. Minn. Min. & Mfg. Co.*, 581 So. 2d 819, 820 (Ala. 1991). Consequently, "it is not the site of the alleged tortious act that is relevant, but the site of the injury, or the site of the event that created the right to sue." *Fitts*, 581 So. 2d at 820. Pinpointing the site of the injury requires an analysis of the specific causes of action alleged. *See Ex parte U.S. Bank Nat'l Ass'n*, 148 So. 3d 1060, 1069 (Ala. 2014) (examining the malicious prosecution cause of action to determine the direct injury alleged and its location).

Here, the Parks Institute brings claims for right of publicity, misappropriation, and unjust enrichment. The court must examine each cause of action to determine where the event or injury occurred that gave the Parks Institute its right to sue. *See id.* at 1071 ("Therefore the place of injury is the state where the 'fact which created the right to sue' occurs."). In a recent decision, the Alabama Supreme Court cautioned against a broad test where the site of injury would always be the site of a plaintiff's "financial harm." *See id.* (differentiating fraud claims, where the alleged injury is financial, from claims alleging malicious prosecution, where the alleged injury is an antecedent lawsuit with mere indirect financial costs). In explaining the problem with such a blanket rule, however, the court did not hold that the site of financial harm could never be the site of injury; it merely reiterated that a court must first determine whether a financial harm was the true injury that gave rise to the plaintiff's claim. *See id.* (distinguishing malicious prosecution claims from "cases involving fraud and tortious interference" where federal courts sitting in Alabama looked to the site of the plaintiffs' financial injuries).

In this case, the three claims alleged by the Parks Institute are alike in that each requires the Parks Institute to plead financial injury. For example, "infringement of the right of publicity looks to an injury to the pocketbook." *Minnifield v. Ashcraft*, 903 So. 2d 818, 823–24 (Ala. Civ. App. 2004) (quoting J.

Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 28:6 (1997)).  The elements of common-law misappropriation require a plaintiff to plead, among other elements, an injury resulting from "the appropriation of plaintiff's name or likeness to defendant's advantage commercially."  *Id.*  The "doctrine of unjust enrichment is an old equitable remedy permitting the court in equity and good conscience to disallow one to be unjustly enriched at the expense of another."  *Avis Rent A Car Sys., Inc. v. Heilman*,  876 So. 2d 1111, 1123 (Ala. 2003).

In sum, each of the Parks Institute's causes of action requires that it prove a direct financial injury.  Thus, the state of the financial injury will provide the substantive law.  The Parks Institute is incorporated in Michigan, and all of the Parks Institute's programming is performed out of its two Detroit, Michigan offices.  Accordingly, Michigan substantive law will apply.[6]

## B.   Alleged Violations of Rosa Parks's Name and Likeness

Target argues that under Michigan law – and Alabama law – summary judgment is proper as to all of the Parks Institute's claims because the plaque and biographical works are protected fully by the First Amendment as biographical

---

[6] While Michigan substantive law applies, if the court were instead to apply Alabama law, a similar result would be reached because Alabama law also contains a "legitimate public interest exception to the right to privacy."  *Minnifield*, 903 So. 2d at 822.  Additionally, like Michigan, Alabama does not expressly recognize the right to publicity as a cause of action, and instead incorporates the cause of action under its commercial appropriation invasion of privacy tort.  *Id.* at 824.

works that concern matters of legitimate public interest.  In opposition, the Parks Institute argues that Target's "reliance on the First Amendment as protection for its action in this case is misplaced."  (Doc. # 61, at 5, 12.)  Specifically, the Parks Institute avers that there is no legal precedent that would allow Target to exploit Rosa Parks's image or likeness for its own commercial purposes.

1.  *The Books and Movie*

Michigan law is fairly limited with regard to actions alleging the unlawful commercial exploitation of a celebrity or public figure's identity.  *See Ruffin-Steinback v. dePasse*, 82 F. Supp. 2d 723, 729 (E.D. Mich. 2000) (discerning how Michigan courts would address a claim for unlawfully depicting a public figure's life story without consent by looking to "all available sources" because the Michigan Supreme Court had not spoken to the issue).  In 2000, however, the Michigan federal district court in *Ruffin-Steinback* addressed "state law tort claims for violation of the right of publicity, unjust enrichment, negligence, conspiracy, invasion of privacy, defamation and intentional infliction of emotional distress" brought by the heirs and personal representatives of members of the Temptations music group and associated individuals.  *Id.* at 726.  In that case, the plaintiffs challenged the National Broadcasting Company's airing of a two-night mini-series covering the story of the Temptations.  The mini-series was told from the

perspective of Otis Williams, one of the group's founding members, but covered the lives of each of the group's members in detail.

Addressing the plaintiffs' claims, the court had to decide "whether depicting one's life story without his or her permission, . . . constitutes a violation of the right to publicity under Michigan Law."[7]  *Id.* at 729.  To answer this question, the court first looked to the Restatement (Third) of Unfair Competition § 46 (1995). *Id.*  It provides that "[o]ne who appropriates the commercial value of a person's identity by using without consent the person's name, likeness, or other indicia of identity for the purpose of trade is subject to liability for the relief appropriate . . . ."  Restatement (Third) of Unfair Competition § 46 (1995).  Section 47 of the Restatement (Third) of Unfair Competition, however, goes on to explain that:

> The name, likeness, and other indicia of a person's identity are used for the purposes of trade under the rule stated in § 46 if they are used in advertising the user's goods or services, or are placed on merchandise marketed by the user, or are used in connection with services rendered by the user.  However, use for the purposes of trade does not ordinarily include the use of a person's identity in news reporting, commentary, entertainment, works of fiction or nonfiction, or in advertising that is incidental to such uses.

Restatement (Third) of Unfair Competition § 47 (1995).  The court also noted that comment c to § 47 states that "the right of publicity is not infringed by the

---

[7] While Michigan has not expressly recognized a right to publicity cause of action, the common law right of privacy has been interpreted by the Michigan Supreme Court to "protect against four types of invasion of privacy."  *Tobin v. Mich. Civil. Serv. Comm'n*, 331 N.W. 2d 184, 189 (Mich. 1982).  While the first three types deal with an "individual's right to be left alone," the last protects against the appropriation of a plaintiff's name or likeness for a defendant's advantage.  *Id.* (quoting *Beaumont v. Brown*, 257 N.W. 2d 522, 531 (Mich. 1977)).

dissemination of an unauthorized print or broadcast biography." *Ruffin-Steinback,* 82 F. Supp. 2d at 730 (quoting Restatement (Third) of Unfair Competition § 47 comment c (1995)).

After looking to the Restatement, the court surveyed case law and confirmed that courts in various jurisdictions treated unlicensed works of biography similarly. *Id*. (citing *Matthews v. Wozencraft*, 15 F.3d 432, 436 (5th Cir. 1994), and *Seale v. Gramercy Pictures*, 949 F. Supp. 331, 337 (E.D. Pa. 1996), as examples of decisions in which a court did not extend publicity rights to unconsented works of an individual's life story).   Across jurisdictions, courts had been reluctant "to extend the right of publicity to depictions of life-stories based on First Amendment considerations."   *Id*.   Accordingly, the court concluded that "Michigan courts would not extend [the] right of publicity tort" to prohibit biographical works and, ultimately, dismissed all of the derivative claims – unjust enrichment, conspiracy, and negligence – finding that they were dependent on the plaintiffs' right of publicity claims.

In this case, the Parks Institute is challenging Target's sale of eight biographical works, the majority of which are simplified accounts of Rosa Parks's life and accomplishments written to educate children about the Civil Rights movement and to demonstrate how one courageous individual can bring about significant change.  The Parks Institute does not claim that any of the biographical

works cast Rosa Parks in a false or defamatory light – separate causes of action for the dissemination of inaccurate information.  Rather, it bases the entirety of its lawsuit on the idea that the First Amendment does not extend to protect the unapproved commercial sale of items that depict the name, likeness, story, or image of Rosa Parks.

For the reasons discussed at length in *Ruffin-Steinback*, however, the Parks Institute is mistaken.  The depiction of Rosa Parks's life story without the Parks Institute's consent does not violate the Parks Institute's ownership rights to Rosa Parks's name or likeness.  To quote from one of the biographical works at issue, Rosa Parks is "perhaps the most iconic heroine of the civil rights movement." Jeanne Theoharis, *The Rebellious Life of Mrs. Rosa Parks*, at xii (2013).  And, as both parties agree, one cannot talk about the Civil Rights movement without including Rosa Parks.  (Doc. # 59, Ex. 2, at 90.)  The importance of her story serves as an apt reminder of why First Amendment protection for biographical works is so vital.

Target's sale of the seven books and one movie does not violate the Parks Institute's ownership rights in Rosa Parks's name or likeness because they are biographical works.  Accordingly, summary judgment is due to be entered in favor of Target as to those eight items on the Parks Institute's right of publicity claim, as

well as the unjust enrichment and misappropriation claims since they are derivative causes of action.

## 2. *The Plaque*

Because the collage-styled plaque is less of a biographical work and more akin to a work of art, the legality of Target's sale of the plaque requires a separate analysis.  As highlighted previously, the Michigan Supreme Court has recognized that a plaintiff may bring suit for the misappropriation of his or her name or likeness under its invasion of privacy tort.  *Battaglieri v. Mackinac Ctr. for Pub. Policy*, 680 N.W. 2d 915, 919 (Mich. Ct. App. 2004).  This cause of action "is founded upon 'the interest of the individual in the exclusive use of his own identity, in so far as it is represented by his name or likeness, and in so far as the use may be of benefit to him or to others.'"  *Id.* (quoting Restatement, Torts, 2d § 652C, comment a).  Because the tort has the potential to offer a troublingly broad swath of protection, however, "courts that have recognized the appropriation tort have also uniformly held that the First Amendment bars appropriation liability for the use of a name or likeness in a publication that concerns matters that are newsworthy or of legitimate public concern."  *Id.*

"The question whether a publication is sufficiently a matter of public interest to be protected by the privilege is ordinarily decided by the court as a question of law."  *Id.*  To make the decision, a court must examine the nature of the

appropriation.    For while "[a] defendant can be 'liable for the tort of misappropriation of likeness . . . if defendant's use of plaintiff's likeness was for a predominately commercial purpose[,]'" the First Amendment will protect the appropriation if it has "a redeeming public interest, news, or historical value." *Id.* (quoting *Tellado v. Time-Life Books, Inc.*, 643 F. Supp. 904, 909–10 (D.N.J. 1986)).

No doubt Target's sale of the plaque served a commercial purpose. Michigan courts, however, have applied the legitimate public interest privilege to instances where the misappropriation occurred for the purposes of making a profit. *See, e.g.*, *id.* at 920 (finding that a fundraising letter was within the privilege when it used quotes from the plaintiff without his consent because the quotes spoke to important policy issues).    Additionally, the legitimate public interest exception does not merely extend to cover current events, as "matters related to education and information are . . . within the scope of legitimate concern." *Stratton v. Krywko*, No. 248669, 248676, 2005 WL 27522, at *6 (Ct. App. Mich. Jan. 6, 2005).  As provided by the Restatement (Second) of Torts:

> The scope of a matter of legitimate concern to the public is not limited to "news," in the sense of current events or activities.  It extends also to the use of names, likenesses or fact in giving information to the public for purposes of education, amusement or enlightenment, when the public may reasonably be expected to have a legitimate interest in what is published.

Restatement (Second) Torts § 652D, comment j (1977).  Expanding on this idea, a federal district court applying Michigan law explained that the "First Amendment privilege does not only extend to news in the sense of current events, but 'extends far beyond to include all types of factual, educational, and historical data, or even entertainment and amusement, concerning interesting phases of human activity in general.'"  *Armstrong v. Eagle Rock Entm't, Inc.*, 655 F. Supp. 2d 779, 786 (E.D. Mich. 2009) (quoting *Nichols v. Moore*, 334 F. Supp. 2d 944, 956 (E.D. Mich. 2004)).

Applying these principles, the court found that Eagle Rock Entertainment's decision to use Louis Armstrong's picture on the cover liner of its DVD entitled, "Mahavishnu Orchestra, Live at Montreux, 1984, 1974," without consent was protected by the First Amendment.  *Id*. at 787.  Specifically, under Michigan law, the court concluded that the DVD and its packaging had an historical and entertainment value for jazz fans everywhere.  *Id.*  Michigan law and the First Amendment require a similar determination in this case.

The collage-styled plaque contains several elements reminiscent of the historic Civil Rights movement.  In fact, by including a picture of Rosa Parks and Martin Luther King, Jr., alongside stylized renderings of the words "Civil Rights" and "Change," Stephanie Workman Marrott, the plaque's creator, sought to inspire viewers to "stand[ ] up for what [they] believe is right" while telling the important

story of Rosa Parks's courage during the Civil Rights movement.   (Doc. # 58.) There can be no doubt that Rosa Parks and her involvement in the Civil Rights movement are matters of utmost importance, both historically and educationally. Accordingly, just as Louis Armstrong's image is significant to the history of jazz, Rosa Parks's name and image are historically significant to the fight for equality in the South. Because Target's sale of the collage-style plaque is protected by the First Amendment, Target is entitled to summary judgment on all of the Parks Institute's claims regarding the plaque, in addition to the biographical works.

## V.  CONCLUSION

Based on the foregoing analysis, it is ORDERED that Target Corporation's motion for summary judgment (Doc. # 56) is GRANTED.   Further, it is ORDERED that Target Corporation's motion for partial summary judgment (Doc. # 26) is DENIED AS MOOT.

A separate final judgment will be entered.

DONE this 9th day of February, 2015.

_____/s/ W. Keith Watkins_____
CHIEF UNITED STATES DISTRICT JUDGE